SPECTOR, Judge.
Petitioner presents for review by writ of certiorari an order of the Career Service *126 Council sustaining his dismissal by the State Beverage Department (now the Florida Board of Business Regulation) for “conduct unbecoming a public employee”.
Pursuant to the provisions of Section 110.061, Florida Statutes, F.S.A., empowering the State Personnel Board to promulgate rules for the discharge of career service employees and Chapter 277.6.05, a rule adopted thereunder, the Department Director notified petitioner, a licensed supervisor, of his dismissal on the above ground and of his right to appeal by letter dated June 13, 1968.
Petitioner learned of the specifics of the charge, possession and disposition of a stolen automobile, some few days before receipt of the above letter through conversations had with his superiors and officially through a letter from the Department dated May 12, 1969. The hearing on appeal to the Council, as contemplated by the statute, was held on May 27, 1969, apparently in deference to a mutual desire of the parties to await the outcome of related criminal proceedings initiated against petitioner.
Counsel for petitioner makes broad constitutional attack upon the provisions of the above referenced statute and rule, as well as the procedural matters leading to the hearing before the. Career Service Council. We find it unnecessary to determine such claims, many of which appear to be facially without merit.
An examination of the record before us fails to reflect competent and substantial evidence to support the respondent Council’s implicit finding in the appealed order of June 1, 1969, that petitioner received, possessed and disposed of stolen property knowing the same to be stolen at the time it was received, nor its conclusion that the Department had “just cause” for dismissing petitioner.
The following facts were disclosed by the testimony given at the hearing.
The involved automobile, a 1966 Porsche, was brought to Jacksonville from South Florida by petitioner’s son some seven to eight months before petitioner sold it. The boy told him he had paid the owner a portion of the purchase price for which he received a tag receipt, the title to be transferred upon payment of the balance. The son told petitioner he had gotten the down payment money from his grandmother. Petitioner inquired of her and she confirmed that part of the story. The boy had previously been in trouble with the authorities, including involvement with another stolen car. Through his efforts to help his son, petitioner incurred heavy debts for which he was being pressed. Concerned at his son’s inability to obtain a certificate of. title and the fact that the wrong license plate was on the vehicle, petitioner suspicioned that something was wrong about the car’s ownership. Petitioner procured the sale of the car through a used car salesman whom a testifying law enforcement officer termed as “a shady character” on May 17, 1968. The first affirmative evidence in the record that he became aware that the Porsche had in fact been stolen occurred after the sale through a conversation he had with the salesman. Several days before he received the dismissal letter, petitioner on his own initiative talked to an official of the Jacksonville Police Department, from which he had retired previous to his present employment, and explained his predicament. He also spoke with the then officer in charge of the auto theft section of the Duval County Sheriff’s Department. He additionally approached his district supervisor and told him the full story. It was after this that he was advised of the particulars of his dismissal.
Although there was some testimony by petitioner’s then district supervisor that petitioner told him that he, petitioner, advised the used car salesman that his son had not produced the title papers and he accordingly suspicioned the car might be stolen, this was the only evidence indicating *127 that petitioner might have had actual knowledge of the character of the automobile. Yet such facts given their full impact are not tantamount to actual knowledge. Moreover, the facts giving rise to a suspicion did not develop or come to petitioner’s attention until after his son had brought the car home and left it with his father. Some time after petitioner’s son purchased the car, he left the same in the custody of petitioner who openly drove the car on and about the streets in the City of Jacksonville making no effort whatever to conceal the vehicle from open view. In fact, it appears that petitioner drove the car to and from work, and from time to time his superior officer rode to and from lunch in the car with petitioner. Such openness of possession is quite inconsistent with a guilty knowledge that the vehicle was stolen. Though the witness also related that petitioner told him he (petitioner) continued to pick at the boy until he admitted he had purchased a hot car, a finding of knowledge is not supported by the evidence nor consistent with the corroborated actions of petitioner in notifying the authorities and his superiors as soon as he acquired actual knowledge that the car had been stolen. The criminal charges of receiving stolen property have been dropped against petitioner, and he has made full restitution for the automobile in his effort to pick up after his son.
Although petitioner’s actions were not a reflection of the soundest judgment on his part, we note his understandable desire to protect his son, his undisputed previously unblemished record, his thirty-one years of honorable service with the law enforcement agencies, and hold that the evidence indicating knowledge on his part that the automobile was stolen was insufficient as a matter of law to establish his guilt under the charge and unsupportive of a finding that his “continued employment would have jeopardized and compromised the effectiveness of the agency in carrying out the duties and responsibilities with which it is charged.”
Accordingly, the decision of the Council is quashed with directions that it order the reinstatement of petitioner with all back pay from the date of dismissal, less any mitigation of damages by way of earnings, if any, between the date of his discharge and date hereof.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.